IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                                                        )<br>            Plaintiff,                        )<br>                                                        )<br>    v.                                              )<br>                                                        )<br>$80,000 IN FUNDS FROM            )<br>ACCOUNT HELD IN THE NAME  )<br>OF I-LOGFOODS, LLC,                 )<br>AT BANK OF AMERICA, N.A.,      )<br>                                                        )<br>            Defendant.                     ) | Civil No.  4:23-cv-368<br><br><br><br>VERIFIED COMPLAINT FOR<br>FORFEITURE IN REM |

The United States of America brings this Verified Complaint in Rem, and alleges as follows, pursuant to the Federal Rules of Civil Procedure, Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions G, 18 U.S.C. §§ 981 and 983, and other applicable authorities.

## I.    NATURE OF THE ACTION

1.    This is an action to forfeit and condemn specific property ("Defendant Property") to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 18 U.S.C. §§ 1343, 1349, 1956, and 1957.

2.    The action arises from an investigation into the fraudulently induced electronic or wire transfer of funds of Axiom Consultants, an engineering business in Iowa City, Iowa.

3.    18 U.S.C. § 1343 makes it a federal crime to obtain money or property by means of false or fraudulent pretenses, representations, or promises, using an

interstate wire communication for the purpose of executing such scheme or artifice, and 18 U.S.C. § 1349 makes it a crime to conspire with others to commit mail fraud.

4.  18 U.S.C. § 1956(a) makes it a federal crime to conduct a financial transaction with property known to be derived from the proceeds of a specified unlawful activity, in this case wire fraud, knowing that the transaction is designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity. A transfer of funds from an account at one financial institution or bank to another, that in any way affects interstate or foreign commerce, is a financial transaction within the terms of § 1956.

5.  18 U.S.C. § 1957(a) makes it a federal crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value of more than $10,000 that is derived from a specified unlawful activity. A deposit, withdrawal, transfer of funds, in or affecting interstate or foreign commerce, by, though, or to a financial institution, is a monetary transaction within the meaning of § 1957.

6.  18 U.S.C. § 1956(h) makes it a federal crime to conspire with another person to commit an offense under §§ 1956 or 1957, subject to the same penalties proscribed for the offense the commission of which was the object of the conspiracy.

7.  18 U.S.C. § 981(a)(1)(C) authorizes the civil forfeiture to the United States of any personal property which constitutes or is derived from proceeds traceable to any offense constituting a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7). Wire fraud under 18 U.S.C. § 1343 is a "specified unlawful activity"

under § 1956(c)(7)(A), pursuant to § 1961(1).

8. 18 U.S.C. § § 981(a)(1)(A) authorizes the civil forfeiture to the United States of any property, including personal property, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957.

9. Based on the facts set forth herein, there is evidence to believe that the Defendant in rem is personal property, namely money and/or other things of value, which constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), a specified unlawful activity under 18 U.S.C. § 1956(c)(7), and is therefore forfeitable under 18 U.S.C. § 981(a)(1)(C), and/or is personal property involved in transactions, or attempted transactions, in violation of 18 U.S.C. §§ 1956(a), 1957(a), and 1956(h), and is, therefore, forfeitable under 18 U.S.C. § 981(a)(1)(A).

10. Pursuant to 18 U.S.C. § 984(a)(1), it is not necessary for the government, in a civil forfeiture action to identify the specific property involved in the offense that is the basis of forfeiture in which the subject property is funds deposited in an account in a financial institution.

11. Pursuant to 18 U.S.C. § 984(a)(1)(B), it is not a defense that the property involved in such a case has been removed or replaced by identical property.

12. Pursuant to 18 U.S.C. § 984(a)(2), any identical property found in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture.

## II.   THE DEFENDANT IN REM

13.   The Defendant in rem is generally described as approximately $80,000 in funds seized from Bank of America, N.A. account number x0884 in the name of I-LOGFOODS, LLC on approximately May 25, 2023, pursuant to a federal seizure warrant (hereinafter "the Defendant Funds.")

## III.   JURISDICTION, VENUE, AND PROCEDURAL AUTHORITY

14.   Under 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States as plaintiff.

15.   Under 28 U.S.C. § 1355(a), this Court has original jurisdiction over this action for the recovery or enforcement of a fine, penalty, or forfeiture incurred under an Act of Congress.

16.   Under 28 U.S.C. § 1355(b)(1)(A), this Court also has jurisdiction over this action because acts or omission giving rise to this civil forfeiture occurred in the Southern District of Iowa.

17.   Under 28 U.S.C. § 1395(a) and (b), venue is proper in this District because this is a civil proceeding for the recovery of a pecuniary fine, penalty, or forfeiture, and is being prosecuted in a District where the action accrued.

18.   Under 28 U.S.C. § 1391(b)(2), venue is also generally proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in, or a substantial part of the property that is the subject of the action is situated in this District.

## IV.  FACTS

19. Those who perpetrate business email compromise (hereinafter "BEC") frauds are known by law enforcement to target businesses and individuals who make wire transfer payments. They often target employees with access to company finances and trick them, via email, into making wire transfers to bank accounts thought to belong to customers or trusted partners, except the money ends up in accounts controlled by the fraudsters.

20. Additionally, law enforcement knows that BEC fraudsters sometimes use sophisticated computer intrusion techniques to alter legitimate payment request emails, change the recipient bank accounts to accounts controlled by the fraudsters, or obtain company information related to outstanding invoices and vendors, to redirect funds from the victims to the fraudster.

21. One of the common methods BEC schemes employ is the use of "spoofed" email accounts. Spoofed email accounts are accounts that imitate the corporate email accounts of an employee of the victim or the employee of a customer of the victim.

22. Spoofed email accounts are specifically designed to trick employees of a company with access to a company's finances into thinking the fake email accounts are authentic.

23. BEC schemes are known to use spoofed email accounts to direct employees, customers, or partners of a victim company to send money to bank accounts controlled by the fraudster or a coconspirator.

24. Some BEC schemes are known to use spoofed email accounts to direct an employee, customer, or partner to wire funds under the guise of legitimate business transactions, as in payments to a vendor.

25. The fraudulent emails or computer intrusions described above are sent via interstate wires and the money sent in response to the BEC fraud is typically sent to bank accounts via interstate wires.

26. To collect the fraudulent proceeds, BEC fraudsters need bank accounts they control, or that are controlled by co-conspirators, to collect the stolen money. Therefore, as part of the scam and prior to money being transferred, someone connected to the fraud scheme will open a bank account under the name of a non-existent business to conceal and disguise the nature, location, sources, ownership, and control of the proceeds of the fraud.

27. Further, after a BEC scheme is successful and the money is deposited into the fraudster's account, bank account records show that the fraudster or associates often act quickly to remove any victim funds deposited into the accounts. The quick withdrawal of funds is also designed to conceal and disguise the nature, location, sources, ownership, and control of the proceeds of the fraud.

28. Those involved in such illegal activities and their associates often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies.

29. Those involved in such illegal activities and their associates often place assets in the names of relatives, friends, or business entities as nominee titleholders

to avoid detection of these assets by government and law enforcement agencies. Even though assets are placed in the names of other persons or entities, the fraudsters and their associates still exercise control over the assets.

30. In approximately September 2022, Axiom Consultants, an engineering business in Iowa City, Iowa, suffered an email intrusion whereby an unauthorized user or users (hereinafter "Intruder") gained access to the email account of its Chief Financial Officer (hereinafter "CFO".)

31. The Intruder compromised the account for approximately twenty-one (21) days, and set up email rules that allowed the Intruder, in part, to control the flow of information the CFO received.

32. The Intruder - or someone working with the Intruder - registered two domain names, with names similar in appearance to that of Axiom Consultants and one of its vendors.

33. Thereafter, the Intruder - or someone working with the Intruder - used these domain names to send financial emails to customers and vendors to divert funds from Axiom Consulting and its customers.

34. Four (4) transfers resulted from these actions: one wire from Axiom Consultants, and three diverted payments from customers of Axiom Consultants, amounting to a total loss of $262,640.66.

35. The diverted payments were transferred on September 12, 2022, and were for $13,708.75, $13,468.74, and $9,412.50.

36. The September 19, 2022, transfer from Axiom Consulting's account

was a wire transfer of funds to a JP Morgan Chase account ending in x1199 (hereinafter "account x1199") in the amount of $226,050.67.

37. Account x1199 is in the name of PW Logistics Transport LLC, signer Peter Williams (hereinafter "Williams").

38. Axiom Consulting had no business dealings with PW Logistics Transport, LLC and did not intend to send the funds to PW Logistics Transport, LLC.

39. The investigation revealed account x1199 was opened on May 26, 2022, using a Social Security Number which was invalid/never been assigned to anyone.

40. Williams drew a check from account x1199 in the amount of $97,800.00 to PW Logistics Transport, LLC, purportedly for a "Tow Truck Purchase" (according to the memo line on the check, which was signed by "Peter Williams.")

41. On September 21, 2022, the check was deposited into Bank of America account ending in x2088 (hereinafter "account x2088"). This account was opened May 27, 2022.

42. Williams drew a check from account x2088 in the amount of $80,000.00 to I-Logfoods, LLC. According to the memo line on this check, it was for "Export of Frozen Food."

43. This $80,000 constitute the Defendant Funds.

44. On or about September 30, 2022, the $80,000.00 check was deposited into Bank of America account ending in x0884 (opened May 10, 2022), signer Thomas Fabyan (hereinafter "Fabyan.")

45. During the relevant period, Fabyan was the sole signatory on the Bank of America account ending in x0884.

46. The I-Logfoods, LLC bank account was opened the same month as the PW Logistics Transport, LLC account that used the fraudulent social security number.

47. Further investigation revealed that the website associated with I-Logfoods, LLC does not appear to be that of a legitimate business. For example, the website has no way for potential customers to order products, and the "Call us" link on the page does not work.

48. On May 23, 2023, the Federal Bureau of Investigation (hereinafter "FBI") obtained a federal seizure warrant for $80,000 in bank account x0884 in the name of I-Logfoods, LLC, located at Bank of America, N.A.

49. May 24, 2023, the FBI executed a seizure warrant via FedEx to Bank of America at 800 Samoset Drive, Wilmington, DE 19713.

50. On June 5, 2023, the FBI received check number 1040042841 from Bank of America in the amount of $80,000.00.

51. In addition to the transfer of $80,000 of funds discussed herein, the FBI's investigation revealed more of the victim's funds were diverted quickly and sent to various places, and dissipated by cash withdrawals and purchases, including a $110,000 international wire to China.

52. A trace of the funds illegally diverted by the Intruder or those working with the Intruder shows a pattern of activity consistent with money laundering,

9

insofar as illegally obtained funds were divided and transferred through a series of intermediary bank accounts (at least one of which was unlawfully created) and eventually commingled with other funds.

53. After the Defendant Funds were seized, the FBI initiated an attempted administrative forfeiture of the $80,000.

54. On or about July 17, 2023, I-Logfoods, LLC contested the attempted administrative forfeiture of the $80,000.

55. In its claim, I-Logfoods, LLC alleged t is a "Ghanian and U.S. – based distributor of fruit-based-products," and that the "$80,000.00 seized represents monies paid to Claimant for the purchase and distribution of its products." The claim was signed by "Kow Amponsah Sam."

56. Submitted with the Claim was a Limited Liability Company Certificate of Formation purportedly issued by the State of Delaware for I-Logfoods, LLC on February 8, 2022. With the certificate is a letter from Advantage Delaware, LLC to Thomas Fabyan and Ekow Amponsah Sam, stating it had formed I-Logfoods, LLC for them.

57. I-Logfoods, LLC provided the FBI with a copy of purported statements from its Bank of America account as alleged proof of its claim to ownership of the Defendant Funds. These records are summarized as follows:

| Summary of I-Logfoods, LLC Bank of America account Statements May 2022 – September 2022 ||
|---|---|
| Date | Transaction / Balance |
| Beginning Balance May 10, 2022 (Account Opened) | $0 |
| Deposit – 05/10/22 | $100 |

| Summary of I-Logfoods, LLC Bank of America account Statements May 2022 – September 2022 ||
|---|---|
| Date | Transaction / Balance |
|  | Balance + $100 |
| Monthly Fee Business Adv Fundamentals – 08/01/22 | -$16 <br> Balance + $84 |
| Deposit – 8/24/22 <br> GOLDSHORE OUTSOURCING LIM | $99,970 <br> Balance + $100,054 |
| Wire transfer fee – 08/25/22 | -$15 <br> Balance +$100,039 |
| Transfer – 08/30/22 <br> Thomas Fabyan | $25,000 <br> Balance + $125,039 |
| Transfer – 08/31/22 <br> Thomas Fabyan | $25,000 <br> Balance + $150,039 |
| Transfer - 09/06/22 <br> Thomas Fabyan | +$25,000 <br> Balance + $$175,039 |
| Transfer - 09/19/22 <br> Contractor Omari | -$3,500 <br> Balance -+$171,539 |
| Deposit - 09/22/22 <br> JP Morgan Chase | +$150,000 <br> Balance +-$321,539 |
| Wire transfer fee – 09/23/22 | -$15 <br> Balance +$$321,524 |
| Online Transfer - 09/27/22 <br> Sam | $-$20,000 <br> Balance +$301,524 |
| Transfer - 09/28/22 <br> Contractor Omari | -$3.500 <br> Balance -+$298,024 |
| Online Transfer - 09/28/22 <br> Fabyan | -$25,000 <br> Balance +$273,024 |
| Online Transfer - 09/30/22 <br> Fabyan | -$25,000 <br> Balance -+$248,024 |
| Transfer - 09/30/22 <br> Bal, Luis | -$1,100 <br> Balance + $246,924 |
| Counter Credit - 09/30/22 | +80,000 <br> Balance +$326,924 |

58.    A review of the bank statements for the I-Logfoods, LLC account supplied with its claim in the administrative forfeiture shows no account entries during the relevant time frame (from the date the account was open until the Defendant funds were deposited on September 30, 2022) that appear to be for expenses such as the purchase of business inventory, payment of monthly rent,

11

payment of monthly salaries for employees, payment of shipping expenses, and any regular or monthly payment of normal business expenses.

59. To the best of the Government's knowledge, information, and belief, formed after its reasonable inquiry of the facts underlying this matter and applicable law, the claims and other legal contentions contained herein are warranted by existing law, and the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

### V.   COUNT/CLAIM ONE: CONCEALMENT MONEY LAUNDERING

60. The Plaintiff hereby realleges the allegations set forth above.

61. Based on the allegations set forth herein, and other facts to be developed, Plaintiff asserts that the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction in violation of 18 U.S.C. § 1956(a)(1)(B) or as property traceable to such property.

### VI.   COUNT/CLAIM TWO: MONETARY TRANSACTION GREATER THAN $10,000

62. The Plaintiff hereby realleges the allegations set forth above.

63. Based on the allegations set forth herein, and other facts to be developed, Plaintiff asserts that the Defendant Funds are subject to forfeiture pursuant 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction in violation of 18 U.S.C. § 1957(a) or as property traceable to such property.

## VII.  COUNT/CLAIM FOUR: WIRE FRAUD

64. The Plaintiff hereby realleges the allegations set forth above.

65. Based on the allegations set forth herein, and other facts to be developed, Plaintiff asserts that the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), § 1956(c)(7), and § 1961(1) as personal property which constitutes, or is derived from proceeds traceable to, wire fraud.

## VIII.  CLAIM FOR RELIEF

WHEREFORE, Plaintiff United States prays that the Defendant Funds be forfeited to it, that the Plaintiff United States be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: /s/ *Craig Peyton Gaumer*
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Daniel R. Spicer, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States and information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as Special Agent of the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 20 day of September 2023.

Daniel R. Spicer, Special Agent
Federal Bureau of Investigation